**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ASTRAZENECA AB, ASTRAZENECA LP, and ASTRAZENECA PHARMACEUTICALS LP,<br><br>Plaintiffs,<br>v.<br><br>DR. REDDY'S LABORATORIES, INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Civil Action No. 15-988-SLR<br><br>**PUBLIC VERSION** |

**DEFENDANT'S PRELIMINARY RESPONSIVE**
**BRIEF IN OPPOSITION OF PLAINTIFFS'**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

**SMITH, KATZENSTEIN & JENKINS LLP**
Neal C. Belgam (#2721)
The Brandywine Building
1000 West Street, Suite 1501
Wilmington, DE 19801
Tel: 302,652,8400
E-mail:nbelgam@skjlaw.com

**OF COUNSEL:**

**LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP**
Stephen F. Roth
Aaron S. Eckenthal
600 South Avenue West
Westfield, NJ 07090
Tel: 908.654.5000
E-mail: sroth@lernerdavid.com
aeckenthal@lernerdavid.com
litigation@lernerdavid.com

Dated: November 1, 2015

*Attorneys for Defendant Dr. Reddy's Laboratories, Inc.*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. LEGAL ARGUMENTS ........................................ 4

A. A Prior Settlement Agreement [redacted] For Selling A Purple Colored Generic Equivalent ........................................ 4

1. AstraZeneca Knew That DRL's Proposed Generic Nexium Capsule Was Going To Be Purple At The Time It Entered Into The Settlement Agreement With DRL ........................................ 5

2. AstraZeneca Contractually Agreed To [redacted] To Use A Purple Capsule ........................................ 8

B. AstraZeneca Acquiesced To DRL's Use Of Purple For Generic Omeprazole Capsules ........................................ 12

C. No Likelihood Of Confusion ........................................ 14

1. Color Trademarks Should Be Narrowly Enforced ........................................ 14

2. No Proof Of Confusion ........................................ 16

D. Additional Issues ........................................ 17

IV. CONCLUSION ........................................ 18

# I. INTRODUCTION

Defendant Dr. Reddy's Laboratories, Inc. (DRL) provides the following preliminary response to Plaintiff AstraZeneca's application for a TRO. AstraZeneca may have trademark rights in a single uniform purple color for its Nexium heartburn medication pill, and may be able to enjoin companies from selling products that confuse consumers. But merely having a trademark and citing the standards for a TRO does not allow a party to obtain extraordinary relief. AstraZeneca skims over a variety of critical issues, such as the scope of its trademark and the commercial impression created by DRL's product, which it acknowledges is not identical in color. AstraZeneca completely fails to tell the Court that [REDACTED] for selling a purple generic form of the Nexium product. And while, in passing, AstraZeneca informs the Court that DRL has been selling other generic versions of AstraZeneca's heartburn medications for more than five years, it does not show the Court how similar to the disputed capsule those admittedly noninfringing capsules look. To visually summarize the issues:



(Roth Decl. ¶ 2, Exh. A.)

Because of these complex issues of [REDACTED], years of acquiescence, and the lack of a likelihood of confusion, DRL requests that a TRO be denied and the parties conduct a preliminary injunction hearing under the Court's normal orderly schedule.

## II. BACKGROUND

The Court should appreciate that there are a number of omeprazole-related capsules at issue. Omeprazole is a substance that treats heartburn. Omeprazole contains two molecules that are mirror images of each other, known as stereoisomers — the "R" form and the "S" form. Omeprazole has 50% "R" and 50% "S," and is sold under the brand name "Prilosesc." A later developed omeprazole-related product known as esomeprazole is sold under the brand name "Nexium." That product has 100% of the "S" form. For years, AstraZeneca sold Prilosec in a uniform purple colored capsule. And for that last six years, DRL sold a generic equivalent in a half purple colored capsule.







**AstraZeneca's Prilosec** **DRL's Generic Equivalent of Prilosec, sold since 2009**

In 2005, AstraZeneca sued DRL and others over DRL's application to the FDA to sell a generic version of Nexium ("ANDA"). During that suit, DRL disclosed the ingredients, form, packaging, and look of its proposed generic product. After extensive proceedings, in 2011, AstraZeneca and DRL ultimately settled their dispute over the ANDA by a confidential Settlement Agreement. In that agreement, [REDACTED] [REDACTED], for a generic equivalent of Nexium. (Roth Decl. ¶ 3, Exh. B.)

The Nexium capsule, and the generic equivalent proposed by DRL in 2010, and released by AstraZeneca in 2011, are shown here. To avoid photographic color variation, the two capsules are in the same shot, with DRL's proposed capsule color on the right. As can be seen, they are almost identical in color.




DRL's use of the purple capsule color [REDACTED] [REDACTED] (Roth Decl. ¶ 3, Exh. B.) When DRL eventually began manufacturing a generic version of Nexium, it chose to move even further from the color [REDACTED] by adopting a capsule having two very different colors, adopting a look similar to its generic versions of Prilosec.

DRL's generic Nexium capsule is shown here. The larger capsule is 40mg, and the smaller one is 20mg. Each have RDY prominently written on the capsule and a number for reference.




Therefore, this case is not as simple a matter as AstraZeneca wants to make it look — claiming that DRL is selling a counterfeit purple capsule and confusing the public at every turn. Indeed, DRL has been selling several half-purple Omeprazole capsules for six years; [REDACTED] and is currently selling a capsule with two colors that looks distinctly different from Nexium.

Because of [REDACTED], DRL believes that AstraZeneca cannot prevail in this matter. But certainly, [REDACTED] the acquiescence to prior half-purple colored capsules, and the lack of any likelihood of confusion because of the difference in the color of the final capsules themselves, AstraZeneca is not entitled to emergent relief.

## III. LEGAL ARGUMENTS

### A. A Prior Settlement Agreement [REDACTED] [REDACTED] For Selling A Purple Colored Generic Equivalent

DRL's right to sell a generic version of Nexium centers over a contract dispute not trademark infringement as AstraZeneca has led this Court to believe. It is therefore not

surprising that AstraZeneca fails to mention the effect of the Settlement Agreement reached between DRL and AstraZeneca in the earlier patent litigation. It is that Settlement Agreement that dominates the present dispute [redacted] Indeed, AstraZeneca is in breach of the Settlement Agreement by bringing this suit, and should be barred from proceeding at all.

### 1. <u>AstraZeneca Knew That DRL's Proposed Generic Nexium Capsule Was Going To Be Purple At The Time It Entered Into The Settlement Agreement With DRL</u>

AstraZeneca states that it only recently learned of DRL's use of a purple capsule for its generic and had first seen DRL's physical product on October 13, 2015. (Pls.' Br. 11.) That cannot be true as there is no dispute that at the time of the Settlement Agreement, AstraZeneca knew that DRL intended to use a purple capsule. DRL filed an ANDA to sell a generic version of NEXIUM. Within its ANDA, DRL identified the form of its generic product as purple colored capsules. Shortly after DRL filed its ANDA, AstraZeneca sued DRL under its drug patents listed for NEXIUM. During that litigation, DRL produced documents and physical samples to AstraZeneca that demonstrated its generic product was going to be in a purple capsule.

As part of its document production, on May 13, 2008, DRL produced its ANDA to AstraZeneca. (Roth Decl. ¶ 4, Exh. C.) There are at least three sections in the ANDA that demonstrate DRL's intention to use a capsule that is purple: (1) Section V-Labeling; (2) Section VII-Components and Composition Statements; and (3) Section XIV-Controls for Finished Dosage Form.

First, Section V-Labeling, pertains to the proposed package insert labeling that is included with the bottle of capsules. (Roth Decl. ¶ 5, Exh. D.) Of particular importance is page 22, which details how DRL supplies its generic form of the drug.



(*Id.*) The same description of the capsule is also present in the same document for the 40mg dosage.

Second, Section VII-Components and Composition Statements, details the list of all components used in the Manufacture of DRL's generic. (Roth Decl. ¶ 6, Exh. E.) In the list of components appearing in the second page of the document (numbered 013225 at the bottom), the last one mentioned is [REDACTED] Later in the same document it discloses that [REDACTED] and [REDACTED] for different dosages of the generic.



(*Id.*)

Third, Section XIV-Controls for Finished Dosage Form, discloses that [REDACTED] [REDACTED]



(Roth Decl. ¶ 7, Exh. F.)

In addition to these disclosures in the ANDA, DRL produced an additional Certificate of Analysis as shown in its cover letter of October 7, 2010. (Roth Decl. ¶ 8, Exh. G.) This analysis was performed on a different batch number (EC10351), but also shows that DRL's capsule was purple for both the cap and body.



(Roth Decl. ¶ 9, Exh. H.)

Finally, on October 12, 2010, only three months before the Settlement Agreement, DRL produced actual batch samples to AstraZeneca, including samples from Batch

No. EC10351. (Roth Decl. ¶ 10, Exh. I.) Below is a picture of a sample of the bottle and physical sample of the capsule that was provided to AstraZeneca:

DRL's Nexium Equivalent from Batch No. EC10351

(Roth Decl. ¶ 11, Exh. J.) The capsule was purple through and through.

Accordingly, in light of the above disclosure of documents and samples to AstraZeneca during the litigation, there can be no dispute that AstraZeneca had full knowledge at least as early as 2008, and definitely by the end of 2010, that DRL intended to utilize the color purple for its capsule at the time the Settlement Agreement was executed.

**2. AstraZeneca Contractually Agreed [redacted]**

There are at least three different provisions of the Settlement Agreement that demonstrate [redacted]



First, Section 6.2(a) of the Settlement Agreement includes [redacted]

[redacted]

(Roth Decl. ¶ 3, Exh. B.)

The Settlement Agreement defines [redacted]

[redacted]

(*Id.*)

If AstraZeneca believed the use of a purple capsule would infringe upon its trademark rights, it certainly had full knowledge long before the Settlement Agreement. Yet it chose to forego raising any such issue with DRL at that time. Thus, AstraZeneca explicitly agreed [redacted]

AstraZeneca not only [redacted], but it agreed to [redacted] Section 6.2(b) of the Settlement Agreement provides that [redacted]

[redacted]

[redacted]

(Roth Decl. ¶ 3, Exh. B.) Thus, not only has AstraZeneca [redacted], but, AstraZeneca has breached this provision by bringing this suit and seeking a TRO.

Section 3.1 of the Settlement Agreement further memorializes [redacted] That section states:

[redacted]

(Roth Decl. ¶ 3, Exh. B) (Emphasis added).

This last section in the Settlement Agreement [redacted] AstraZeneca cannot claim that it did not know, or did not suspect, DRL would sell a purple capsule. AstraZeneca was expressly told by DRL that it would sell a purple colored capsule, and was provided with a sample. But even if AstraZeneca wanted to

argue that it may not have known what DRL's ultimate product would look like, it [redacted]

Notwithstanding [redacted], DRL moved further away from the look of the AstraZeneca capsule by using two different colors.

As demonstrated by the above image, the two colors has the effect of DRL's capsule being significantly distinctive and not easily confused with AstraZeneca's "Purple Pill."

AstraZeneca may argue that a final "catchall" provision excluded trademark rights from the agreement. For example, Section 9.13 states that [redacted]



[redacted]

(Roth Decl. ¶ 3, Exh. B.)

However, Section 9.13 on its own does not provide the whole picture. In fact, when viewed in conjunction with other sections of the Settlement Agreement it becomes clear that Section 9.13 is inapplicable for at least two reasons. First, [redacted] That means the [redacted] in Section 3.1 to DRL for its use of a purple colored capsule and [redacted] provided by AstraZeneca in Section 6.2 are excluded from this section. Second, Section 9.13 states only that [redacted] DRL does not and has never claimed rights to any trademark, trade dress, etc. that may belong to AstraZeneca. Indeed, assuming arguendo that AstraZeneca has such rights, DRL simply cannot be sued for infringement of such rights because of the covenant that AstraZeneca granted to it in Section 6.2. Accordingly Section 9.13 does not permit AstraZeneca to maintain the present motion for a TRO.

### B. AstraZeneca Acquiesced To DRL's Use Of Purple For Generic Omeprazole Capsules

As noted above, DRL has been selling a half-purple Prilosec generic capsule since 2005. Not surprisingly, AstraZeneca did not show the actual product in its opening brief.

As can be seen, each DRL capsule is half purple.




(Roth Decl. ¶ 2, Exh. A.)

While acquiescence is a fact-specific issue (again weighing against granting a TRO), this Court has found no irreparable harm in similar circumstances. For example, in *Barnes Group, Inc. v. Connell Ltd. Partnership*, No. 1989-cv-00531, 1990 U.S. Dist. LEXIS 2520 (D. Del. 1990 Mar. 7, 1990), the plaintiff sued for infringement of its trademarks pertaining to a color coding system. Both parties produced springs rated medium, medium-heavy, heavy, and extra-heavy. *Id.* at *5. The dispute centered on the colors for the medium and medium-heavy duty springs. For over 20 years, both parties used blue and red to designate their medium and medium-heavy springs. The plaintiff used blue for medium springs and red for medium-heavy duty springs. The defendant used the opposite. *Id.* at *27. After 20 years, the defendant announced a new line of springs that would include a narrow stripe of color correlating to plaintiff's spring color coding system. *Id.* at *9. The plaintiff thought this was too much and moved for a

preliminary injunction. Judge Wright denied the plaintiff's motion, in part, because the plaintiff was not likely to suffer irreparable harm. *Id.* at *40-41. Specifically, Judge Wright reasoned that if the "market history of overlap between solid blue and red colors" used by the parties did not harm plaintiff over the course of twenty years or more, "it is hard to ascertain how [defendant's] sale of [the new] springs would irreparably harm plaintiff until this case is finally adjudicated on the merits." *Id.* at *41. The same result should apply here.

**C. <u>No Likelihood Of Confusion</u>**

Imagining for the moment if case-dispositive contract and fact-sensitive acquiescence issues were not present, AstraZeneca should still not be allowed emergent relief as it cannot meet the high burden for the likelihood of success prong for such relief. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)) ("It is beyond dispute that 'the grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'"); *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008)) ("[I]njunctive relief is an 'extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'").

**1. <u>Color Trademarks Should Be Narrowly Enforced</u>**

There is no dispute that a party claiming a trademark in a color has no rights to all colors, or even all colors in that section of the rainbow. *See Unique Sports Prods. v. Ferrari Importing Co.*, No. 2009-cv-00660, 2011 U.S. Dist. LEXIS 124801 (N.D. Ga. Oct. 27, 2011) (finding no likelihood of confusion because "[a]lthough both products

[a]re generally light blue, the shades [a]re very distinguishable"). *Id.* at *9. There, the court characterized defendant's product as "almost teal," while the plaintiff's product had "a purple hue." *Id.*






**Unique Sports' Overgrip** **Ferrari's Gauze Tape**

As noted above, in two of AstraZeneca's three asserted trademarks, the registration claims gold rings that encircle the capsule. Registrations Nos 2,980,749 and 3,062,072. These gold bands are lacking from the DRL accused capsules. And while each trademark claims purple as a feature, that purple does not cover all purples. In fact, there are no stripes or gold on DRL's product of any sorts whatsoever.

DRL's two colored capsule uses purples that are different shades, and creates a different commercial impression.



### 2. No Proof Of Confusion

The ultimate issue in trademark cases is likelihood of confusion. While AstraZeneca claims there would be likelihood of confusion, it has not provided any proof of such confusion, either by actual confusion or by a survey. AstraZeneca claims it is not surprising that there has been no actual confusion as it has only been a month since the launch of DRL's generic. But there are other ways to prove a likelihood of confusion. It is well-settled that "[c]onsumer surveys and testimony are probably the only direct evidence of secondary meaning; the other sources are circumstantial, though the plaintiff may rely solely on them." *Duraco Prods. v. Joy Plastic Enters.*, 40 F.3d 1431, 1452 (3d Cir. 1994); *see also J & J Snack Foods, Corp. v. Nestle USA, Inc.*, 149 F. Supp. 2d 136, 153 (D.N.J. 2001) (preliminary injunction denied where plaintiff had not conducted any surveys, studies or tests "despite ample time, resources and motivation to do so.").

Circumstantial evidence should not be enough to grant the emergent relief of a TRO — especially where other issues of release and acquiescence are present. AstraZeneca certainly had the "time, resources, and motivation" to procure a survey. Perhaps they did, and it didn't turn out well. Regardless, the Court only has attorney argument to conclude whether consumers would be confused by the competing capsules. And such arguments do not meet the burden for a TRO where the products do not look the same.[1]

---

[1] In its sole side-by-side comparison of the two products is at paragraph 47 of AstraZeneca's brief. That picture fails to completely capture the color of the actual products, which have been provided to the Court in physical form for better reference.

And while AstraZeneca spends considerable time talking about the packaging of its product, there is no dispute that DRL's equivalent is dispensed to the patients by pharmacists, in a clearly marked bottle.




(Pls.' Br. 11.)

**D. <u>Additional Issues</u>**

Finally, while DRL has not had time to address all of the issues that go to the merits of the case, a number of other issues are present, which also weigh against a TRO without an evidentiary hearing in a preliminary injunction. Those include:

- AstraZeneca's waiting a month to file the TRO after the launch of DRL's product. Indeed, this is precisely the type of laches that on its own, should preclude granting emergent relief.
- The damage that could be done to DRL by a TRO, both monetarily and to its goodwill.
- The lack of bad-faith by DRL in its launch as a result of its reliance on [REDACTED] and acquiescence by AstraZeneca.
- The lack of damage to AstraZeneca by a denial of the TRO. Indeed, if the Court can schedule a preliminary injunction hearing in less than a

month, then the delay in granting a possible injunction will be less than the delay that AstraZeneca already incurred by its own tardiness.

- The public policy of allowing low-cost generics alternates to be available to consumers.

Each of these issues are better addressed in a full hearing with witness testimony, and where the threshold contract issues can be weighed.

## IV. CONCLUSION

For the reasons discussed above, DRL respectfully requests that the Court deny AstraZeneca's Motion for a Temporary Restraining Order.

Dated: November 1, 2015

SMITH, KATZENSTEIN & JENKINS LLP

By: s/ Neal C. Belgam

Neal C. Belgam (#2721)
The Brandywine Building
1000 West Street, Suite 1501
Wilmington, Delaware 19801
Tel: 302.652.8400
NCB@skjlaw.com

**OF COUNSEL:**
Stephen F. Roth
Aaron S. Eckenthal
LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090
Tel: 908.654.5000
E-mail: sroth@lernerdavid.com
aeckenthal@lernerdavid.com
litigation@lernerdavid.com

*Attorneys for Defendant Dr. Reddy's Laboratories, Inc.*