IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ASTRAZENECA AB, ASTRAZENECA LP, and ASTRAZENECA PHARMACEUTICALS LP,

Plaintiffs,

v.

DR. REDDY'S LABORATORIES, INC.,

Defendant.

Civ. No. 15-988-SLR

---

Michael P. Kelly, Esquire, David M. Silver, Esquire, and Benjamin A. Smyth, Esquire of McCarter & English, LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: David M. Kelly, Esquire and Robert D. Litowitz, Esquire of Kelly IP, LLP.

Neal G. Belgam, Esquire and Eve H. Ormerod, Esquire of Smith Katzenstein & Jenkins LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: William L. Mentlik, Esquire, Roy H. Wepner, Esquire, Aaron S. Eckenthal, Esquire, and Stephen F. Roth, Esquire of Lerner, David, Littenberg, Krumholz & Mentlik, LLP.

---

**MEMORANDUM OPINION**

Dated: July 20, 2016
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On October 28, 2015, plaintiffs AstraZeneca AB, AstraZeneca LP, and AstraZeneca Pharmaceuticals LP (collectively, "plaintiffs") filed this trademark suit against defendant Dr. Reddy's Laboratories, Inc. ("defendant") alleging, inter alia, trademark infringement and counterfeiting, for defendant's use of the color purple on, and relating to the marketing of, its generic version of Nexium®. (D.I. 1) Presently before the court are defendant's motion to transfer (D.I. 68) and motion for partial judgment on the pleadings (D.I. 66), as well as plaintiffs' motion to dismiss the counterclaim (D.I. 75). The court has jurisdiction pursuant to 15 U.S.C § 1121, and 28 U.S.C. §§ 1331, 1338 (a) and (b). The court has supplemental jurisdiction over the counterclaim pursuant to 28 U.S.C. § 1366.

## II. BACKGROUND[1]

### A. Parties

Plaintiff AstraZeneca AB is a company operating and existing under the laws of Sweden with its principal place of business in Södertälje, Sweden. Plaintiffs AstraZeneca LP and AstraZeneca Pharmaceuticals LOP are limited partnerships organized and existing under the laws of the State of Delaware with addresses in Wilmington, Delaware. Defendant Dr. Reddy's Laboratories, Inc. is a corporation organized and existing under the laws of the State of New Jersey with its principal place

[1]The facts related to plaintiffs are taken from the verified complaint filed in this litigation, and/or have not been disputed by defendant. The court presents only the facts needed for the disputes at bar. A fuller recitation is provided in the order on preliminary injunction. (D.I. 31)

of business in Princeton, New Jersey. (D.I. 1 at ¶¶ 3-6) Plaintiffs and defendant, independently, conduct business in Delaware related to the issue at bar. (D.I. 1 at ¶ 8)

**B. Factual Background**

Since 1989, plaintiffs have used the color purple to brand their gastrointestinal ("GI") products[2] for treating severe heartburn and acid reflux. The U.S. Patent and Trademark Office has confirmed the brand status of plaintiffs' purple color by awarding plaintiffs three federal trademark registrations covering the color purple for GI pharmaceuticals and one covering the phrase "THE PURPLE PILL®" for the same goods. (D.I. 5 at 10) Several companies have recently entered the market with generic versions of plaintiffs' Nexium® esomeprazole magnesium compound. The first two companies permitted by the FDA to do so - Teva and Mylan - have used blue or white capsules. Defendant, a maker of generic drugs, launched its generic GI pharmaceutical (esomeprazole) in September 2015 and manufactured its generic version of Nexium® in two-tone purple pills.

**C. Previous Litigation**

In 2008, plaintiffs brought suit (the "2008 ANDA litigation")[3] against defendant in the District of New Jersey "over the sale of a generic version of . . . Nexium®." (D.I. 69 at 1) Defendant had filed an ANDA with the FDA for its generic version. (*Id.* at 2) Defendant allegedly provided the ANDA and samples to plaintiffs. (*Id.* at 3) In 2011, the parties executed a Settlement Agreement and the District of New Jersey entered a

[2] Nexium® and Prilosex®.

[3] *AstraZeneca v. Dr. Reddy's Labs., Ltd*, Civ. No. 05-5553-JAP-TJB (D.N.J.) consolidated with *Dr. Reddy's Labs., Ltd v. AstraZeneca AB*, Civ. No. 08-2496-JAP-TJB (D.N.J.). (D.I. 69 at 3)

Consent Judgment. (*Id.* at 1) The Settlement Agreement and Consent Judgment (collectively, the "Agreement") provided in Section 3.1:

> In settlement of the disputed claims in the Action, and in consideration of the representations, warranties and covenants contained in this Settlement Agreement, subject to and effective only upon entry of the Consent Judgment (whether with or without modification as provided for in Section 2.2), AstraZeneca, on behalf of itself and its Affiliates, and its and their respective predecessors, successors, assigns, agents, officers, directors, employees and representatives, hereby fully, finally and irrevocably relinquishes, releases and discharges [Dr. Reddy's Laboratories, Inc. ("DRL")] and its Affiliates, and its and their respective predecessors, successors, assigns, agents, officers, directors, employees, representatives, suppliers, importers, manufacturers, distributors and customers (the "DRL Releasees"), from any and all claims, demands, damages, liabilities, obligations, and causes of action known or unknown, suspected or unsuspected, in law or equity, including costs, expenses and attorneys' fees, that were asserted, or that could have been asserted, by AstraZeneca or any of its Affiliates in connection with the DRL Product, the Approved Nexium Product or the Actions and arising before the Effective Date of this Settlement Agreement.

(D.I. 79 at 4) Section 6.2(a) similarly states plaintiffs will not sue defendant for "[l]osses, known or unknown, suspected or unsuspected, in law or equity, that were asserted or that could have been asserted by AstraZeneca . . . in connection with the [defendant's product] or the Actions and arising before the Effective Date of this Settlement Agreement . . . ." (*Id.*) Section 6.2(c) prohibits plaintiffs from taking action "to prevent the launch, manufacture, use, sale, offer for sale, importation or distribution of [defendant's] product . . . as permitted under the terms of [the Agreement]." (*Id.* at 5) Section 9.13 addresses the trademark rights:

> Limitation of Rights Granted. Except for the rights, agreements and covenants specifically granted pursuant to this Settlement Agreement, no other rights, agreements or covenants are granted or implied by this Settlement Agreement. DRL shall have no right, title or interest in or to (a) any trademark, trade dress, brand mark, services mark, trade name, brand name, logo or other similar business symbol of AstraZeneca or its Affiliates . . . including the trademark Nexium® or any trade dress of any

> Nexium® product or (b) any know-how, trade secrets, copyrights or other intellectual property of AstraZeneca or its Affiliates . . . , except the limited rights expressly provided for herein.

(*Id.*) The Agreement "may be enforced by [plaintiffs] . . . as permitted by the [its] terms" and the District of New Jersey "retain[ed] jurisdiction to enforce or supervise performance under [the Agreement]." (D.I. 73 at 2)

A month after defendant began marketing the generic product, plaintiffs filed the instant action in the District of Delaware against defendant alleging trademark infringement, counterfeiting, unfair competition, inter alia, for its use of the color purple on the generic drug capsules. (D.I. 69 at 3) Defendant counters that, under the terms of the Agreement, plaintiffs permitted defendant to use the color purple. (D.I. 73 at 3) In November 2015, the court granted plaintiffs' motions for a temporary restraining order ("TRO") and preliminary injunction. (D.I. 31) Therein, applying New Jersey contract law, the court concluded that the Agreement addressed only ANDA issues and the plain language protected plaintiffs' trademark rights. (*Id.* at 10-11) Defendant appealed the decision and the trademark action was stayed.[4] (D.I. 69 at 4)

In April 2016, defendant voluntarily dismissed the appeal and the court lifted the stay. (D.I. 65) According to defendant, it "had already withdrawn its original purple

---

[4] Also in November 2015, "[defendant] filed a motion for preliminary injunction in the 2008 ANDA [litigation] in New Jersey" to enjoin plaintiffs from continuing with the trademark action on the basis that such action breached the Agreement. (D.I. 31 at 10-11) A few days later, defendant filed a complaint against plaintiffs in New Jersey for breach of contract. (*Id.*) The actions were stayed pending the appeal of the TRO in the action at bar. (*Id.*) Defendant also withdrew its motion for preliminary injunction in New Jersey. (D.I. 73 at 4) There is an unrelated pending action between the parties in New Jersey regarding over-the-counter Nexium 24HR®.

capsules pursuant to this [c]ourt's order; and because [defendant] had already suffered enormous damages that could not be mitigated by this [c]ourt's preliminary injunction being vacated or reversed," it deemed the appeal moot. (D.I. 69 at 5)

## III. MOTION TO TRANSFER

### A. Standard

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Much has been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a). *See, e.g., In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 366 (D. Del. 2012). "[A] plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F. Supp. 2d at 371 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Indeed, the Third Circuit in *Jumara* reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879 (citation omitted).

The Third Circuit goes on to recognize that,

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The Court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

> The private interests have included: plaintiff's forum of preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - **but only to the extent that the witnesses may actually be unavailable for trial in one of the fora**; and the location of books and records **(similarly limited to the extent that the files could not be produced in the alternative forum)**.
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted) (emphasis added).

**B. Analysis**

With the above "jurisdictional guideposts" in mind, the court turns to the "difficult issue of federal comity" that transfer motions present. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 968, 975 (3d Cir. 1988). Plaintiffs do not challenge that venue would also be proper in the District of New Jersey. As such, the court does not address this further. *See* 28 U.S.C. § 1404(a); (D.I. 73) Both Delaware and New Jersey are legitimate forums in which to pursue the litigation at bar. Plaintiffs and defendant are global companies that sell their products in various states (including Delaware and New Jersey). The locus of a party's business activities is a traditional and legitimate venue.

Defendant contends that New Jersey is a more suitable forum based on the Third Circuit's "first-filed" rule on the grounds that the 2008 ANDA litigation involved the same product and the parties. (D.I. 68 at 7-8) The first-filed rule provides that, "[i]n all cases

of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1941). If applied, the rule counsels that a later-filed action involving the same controversy should be dismissed, transferred, or stayed in favor of the first-filed action. *See E.E.O.C. v. Univ. of Pa.,* 850 F.2d 968, 975–79 (3d Cir. 1988) ("Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule."). "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Univ. of Pa.,* 850 F.2d at 971 (citation omitted). Factors that have been regarded as proper bases for departing from the first-filed rule include bad faith, forum shopping, when the second-filed action has "developed further than the initial suit," and "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." *Id.* (citations omitted).

While the parties at bar are the same as in the 2008 ANDA litigation, the issues are not and there is no overlapping subject matter. More specifically, this case is the first-filed action for the trademark dispute. Although defendant argues that the Agreement connects the two cases, the court previously ruled against this defense. As noted in this regard, the Agreement specifically limited defendant's release to only those claims, demands, damages, liabilities, obligations, and causes of action that were asserted, or could have been asserted, in connection with the products at issue or the 2008 ANDA litigation. Because ANDA litigation is structured to take place in an artificial

market before generic products are commercially launched, trademark issues were not, and could not have been, addressed in the context of the 2008 ANDA litigation. If there were any doubts about this proposition, the Agreement further clarified the limits to defendant's release by explicitly denying defendant any rights, title or interest in or to any of plaintiffs' trademarks, trade dress, brand marks, service marks, trade names, brand names, logos or other similar business symbols. Defendant's arguments to the contrary are not persuasive. The 2008 ANDA litigation and the instant lawsuit involve different controversies, different statutes, different remedies. *See Mallinckrodt, Inc. v. E-Z-Em Inc.*, 660 F. Supp. 2d 349, 358 (D. Del. 2009) (noting the patents-in-suit "shared two of the same inventors, but . . . were not part of the same patent family [], and the applications were filed years apart). The court declines to transfer the case to New Jersey based on the first-filed rule.[5]

Turning to the *Jumara* factors, defendant claims that plaintiffs' choice of forum should be given little to no deference as it is "outweighed by the ties to New Jersey."[6] (D.I. 68 at 11) Defendant argues these ties include prior Nexium® suits brought by plaintiffs in the District of New Jersey, defendant's principal place of business, and the exclusive jurisdiction provision in the Agreement. As the trademark issue has not been litigated in New Jersey, defendant's argument that the New Jersey District Court is

---

[5] Defendant contends the District of New Jersey retained exclusive jurisdiction over the matter under the Agreement. As previously explained, the trademark issue is not governed by the Agreement.

[6] Defendant also insinuates that plaintiffs are "forum-shopping" and, by implication, have selected Delaware in bad faith as the forum of choice to litigate the trademark issue. Given an appropriate venue in the first instance, the court declines to characterize plaintiffs' choice of venue as "forum shopping" when, by moving to transfer venue, defendant is doing the same thing—choosing a venue that it believes to be more favorable to its claims for whatever reason.

already familiar with the issue falls short. To the contrary, this court has reviewed the issue in evaluating plaintiffs' motions for a TRO and preliminary injunction. Similarly, defendant's contention that New Jersey "is the only court that could preside over **all** Nexium®-related disputes between" the parties (*id.* at 12) is not accurate since the Agreement is limited to those disputed claims that were settled. Although defendant's place of business is in New Jersey, it is a large global company with business interests in Delaware. That plaintiffs have historically been accorded the privilege of choosing their preferred venue for pursuing their claims remains a significant factor.

The Third Circuit in *Jumara* indicated that, in evaluating the convenience of the parties, a district court should focus on the parties' relative physical and financial condition. Defendant contends that it "is just as convenient" and efficient to litigate in New Jersey. (D.I. 68 at 13) While defendant emphasizes plaintiffs' global footprint, it fails to acknowledge its own size. Defendant is also a large global company and would not suffer by a suit in Delaware. Both companies have a history of initiating litigation in Delaware.[7]

With respect to the convenience of the witnesses, it is not whether witnesses are inconvenienced by litigation but, rather, whether witnesses "actually may be unavailable for trial in one of the fora" that is the relevant consideration in this analysis. *Jumara*, 55 F.3d at 879. Defendant argues that a transfer is appropriate because "it is only a short train ride to Trenton" from Delaware and "there is no reason to believe [a key witness for plaintiffs] would be unavailable for trial if the case were transferred to New Jersey." (D.I.

---

[7] For example, plaintiffs point out that defendant initiated a suit in the District of Delaware against another party in August 2015. (D.I. 73 at 14)

68 at 15) These arguments are misguided. The burden is on the movant to show that there is a **need** for a transfer. Defendant has not indicated that any particular witness who may be called upon to testify at trial would be unwilling to do so.

The Third Circuit in *Jumara* advised that the location of books and records is only determinative if "the files c[an] not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Defendant argues that since records exist in both states, "one party will be required to transport records to the other forum." (D.I. 68 at 15) Consistent with the realities of modern technology, the court's view is that virtually all businesses maintain their books and records in electronic format readily available for review and use at any location. Additionally, the parties have previously litigated in both states so it is logical to conclude the parties are able to transport records to either forum. Defendant fails to show how these documents or tangible evidence are incapable of being presented at trial in Delaware.

As to defendant's argument that a trial in New Jersey would be faster, easier, and less expensive, the 2008 ANDA litigation and the case at bar are not significantly connected. As previously explained, the intellectual property issues differ and the Agreement is not relevant to the trademark issue. Moreover, the court at bar has familiarity with the trademark issue based on plaintifs' motions for a TRO and preliminary injunction. Neither state has a significantly greater public or local interest than the other state has in resolving the issue. Defendant has the burden of persuading the court that transfer is appropriate, not only for its convenience but in the interests of justice. In the case at bar, plaintiffs chose a legitimate forum. The court is not

persuaded that transfer is warranted in the interests of justice. Defendant's motion to transfer venue (D.I. 68) is denied.

## IV. MOTION TO DISMISS

### A. Standard of Review

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 175, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 668). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits

attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

**B. Analysis**

Plaintiffs move to dismiss defendant's counterclaim for breach of the Agreement. Defendant claims the Agreement permitted it to "introduce its generic product as set forth in its ANDA (which includes a purple capsule color)" and that plaintiffs released defendant "from claims it had against defendant for its generic Nexium." (D.I. 48 at 16 ¶ 23) As stated, the court previously considered defendant's argument when it was presented as a defense to plaintiffs' TRO and found that the plain language of the Agreement did not release defendant from any liability for using the color purple. (D.I. 31 at 10-11) The Agreement expressly protects plaintiffs' trademark rights from defendant's use in Section 9.13.

While findings from a preliminary injunction typically are not considered for a motion to dismiss, there are rare cases where it is appropriate in the interest of judicial

resources. *McTernan v. City of York, Penn.*, 577 F.3d 521, 530-31 (3d Cir. 2009). "Findings made in granting or denying preliminary injunctions can have preclusive effect if the circumstances make it likely that the findings are "sufficiently firm" to persuade the court that there is no compelling reason for permitting them to be litigated again." *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 474 (3d Cir. 1997). "In determining whether the resolution was sufficiently firm, the . . . court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *In re Brown*, 951 F.2d 564, 568 (3d Cir. 1991).

In *McTernan*, the Third Circuit found that both motions involved the same issue and that the evidence clearly resolved a necessary element.[8] 577 F.3d at 531. The Court held "plaintiffs had the full opportunity to present their arguments at the hearing on the preliminary injunction" from which the district court found there was "no probability of success on the merits." *Id.* Similarly, here, defendant presented its full argument, including the Agreement, as its defense against plaintiffs' motion for a TRO. (D.I. 16) The court issued a reasoned response to it.[9] (D.I. 31 at 11 ¶ 22) Defendant appealed the court's decision, and then voluntarily dismissed such appeal.

---

[8] During a preliminary injunction hearing in *McTernan*, the district court found the ramp, where protestors were standing, was a nonpublic forum. 577 F.3d at 531. The issue was whether preventing protestors from standing on the ramp violated their rights. *Id.* The Third Circuit found no reason to relitigate the issue, and affirmed the district court's decision to deny the protestors' preliminary injunction motion and grant defendants' motion to dismiss. *Id.*

[9] Contract interpretation is considered a question of law in New Jersey. *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins.* Co., 767 F.2d 43, 47 (3d Cir. 1985) (citations omitted). Under New Jersey law, courts should interpret a contract considering "the objective intent [of the parties] manifested in the language of the contract in light of the circumstances surrounding the transaction." *Id.* (citations

Applying New Jersey law, the court interpreted the plain language of the contract. (D.I. 31 at 10-11) Sections 3.1, 6.2(a), 6.2(c) and 9.13 of the Agreement prevent: (1) plaintiffs from interfering with the sale of the defendant's product under the terms of the Agreement; (2) defendant from using plaintiffs' trademarks; and (3) plaintiffs from bringing suit against defendant for claims it could have asserted relating to the product that arose prior to the Agreement. Defendant's arguments that its product was manufactured pursuant to the ANDA, as required by the Agreement, and that the color purple for the capsule was specified in the ANDA[10] are not determinative. As explained above, the court concluded that the Agreement did not permit defendant the use of plaintiffs' trademarks. The trademark issues at bar did not arise until defendant commercially launched its product. Section 9.13 (addressing trademark rights) would be meaningless if, as defendant contends, Sections 3.1 and 6.2 were to permit the use of the color purple.[11] This interpretation contradicts the rest of the Agreement. Moreover, from the court's extensive ANDA litigation experience, the court takes judicial notice of the fact that such submissions are voluminous by nature, and that the focus of ANDA litigation is on the formulation of the generic product for infringement purposes (not on the color of the proposed commercial product, which is not yet on the market).

---

omitted).

[10] Defendant argues in this regard that the Agreement covered its right to use a purple capsule because its generic product was described as "purple opaque" in four sections of defendant's ANDA submission, which submission was made part of the litigation record before the Agreement was executed. Defendant does not fully describe its ANDA submission for purposes of the record at bar. (D.I. 16 at 5-7)

[11] Defendant's interpretation of the Agreement also leads to an absurd result as it allows the production of other Purple Pills, causing plaintiffs to compete against the trademarks that plaintiffs seek to protect.

For the above reasons, the court concludes that there is no compelling reason to relitigate the issue and grants plaintiffs' motion to dismiss the counterclaim.

## IV. MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### A. Standard

When deciding a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993). The motion can be granted only if no relief could be afforded under any set of facts that could be provided. *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *see also Southmark Prime Plus, L.P. v. Falzone*, 775 F. Supp. 888, 891 (D. Del. 1991); *Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Ctr.*, 536 F. Supp. 1065, 1072 (E.D. Pa. 1982) ("If a complaint contains even the most basic of allegations that, when read with great liberality, could justify plaintiff's claim for relief, motions for judgment on the pleadings should be denied."). However, the court need not adopt conclusory allegations or statements of law. *In re General Motors Class E Stock Buyout Sec. Litig.*, 684 F. Supp. 1119, 1125 (D. Del. 1988). Judgment on the pleadings will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988).

### B. Analysis

Defendant moves for partial judgment on the pleadings regarding the counterfeit claim. Counterfeiting "occurs where an unauthorized representation of a legally

registered trademark is carried on goods which are similar to the product for which the trademark is registered. The object of the counterfeiter is to deceive the purchaser into believing that he or she is buying a legitimately branded product." 4 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:10 (4th ed. 2015). "The Lanham Act defines a 'counterfeit' as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark'." *Id.* Counterfeiting has a higher standard for similarity so the "likelihood to cause confusion" standard used for infringement violations is insufficient. *Id.* Instead, plaintiffs must establish defendant infringed on a registered trademark and "intentionally use[d] the trademark knowing it was counterfeit or was willfully blind to such use." *Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc.*, No. 96-6861, 1998 WL 756440, at *7 (E.D. Pa. Nov. 3, 1998); *see Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 566, 580 (E.D. Pa. 2002), *amended* (June 28, 2002).

One of plaintiffs' federal trademark registrations specifically states that "[t]he mark consists of the color purple as applied to the [pharmaceutical preparations and substances for the treatment of gastrointestinal diseases]." (D.I. 1 at 34) The diagram shows the color evenly distributed across the product. (*Id.*) Plaintiffs argue that this registration covers all shades of purple so defendant's two-tone purple capsule for its generic version of Nexium® meets the description. Defendant counters that this is not sufficient to meet the high standard for counterfeiting because plaintiffs do not currently use a similar color scheme.

Defendant's purple GI pill may meet the counterfeit standard depending on "the comparison . . . made from the perspective of an average purchaser rather than an

expert." *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 533 (2d Cir. 1983). The marks do not need to be identical and may have minor differences that would not be apparent to the typical consumer and, thus, legally insignificant. *Consol. Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp. 2d 188, 196 (S.D.N.Y. 1999). Most patients cannot readily identify their medication or the manufacturer based on the pill itself; differences in imprints on the capsules are examples of potentially legally insignificant factors. At this stage, it is unhelpful to consider whether defendant's bottle would eliminate consumer confusion. While defendant's bottle displays the manufacturer and the generic name, the consumer typically receives the product in the pharmacy's prescription bottle, not the manufacturer's container. In viewing the facts set forth in the light most favorable to plaintiffs, the court cannot conclude at this juncture that an average purchaser would distinguish the generic product (two-tone purple pills) from plaintiffs' single-tone purple pills. The court denies the motion for partial judgment on the pleadings.

## V. CONCLUSION

For the foregoing reasons, the court denies defendant's motion for partial judgment on the pleadings (D.I. 66) and motion to transfer (D.I. 68). Plaintiffs' motion to dismiss the counterclaim is granted (D.I. 75). An appropriate order shall issue.